JETT v. KANSAS CITY, M. & O. RY. CO. OF TEXAS.

(Court of Civil Appeals of Texas. Austin. May 3, 1911. On Motion for Rehearing, June 14, 1911. On Second Motion for Rehearing, July 1, 1911.

1. Appeal and Error (§ 1068*)—Harmless Error—Instructions.
   Any error toward defendant in instructing and refusing instructions on the question of boundary in trespass to try title was harmless, where plaintiff was entitled to a directed verdict.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228; Dec. Dig. § 1068.*]

On Motion for Rehearing.

2. Trial (§ 252*)—Instructions—Refusal.
   Instructions not supported by evidence are properly refused.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

On Second Motion for Rehearing.

3. Appeal and Error (§ 715*)—Review—Papers Subject to Consideration.
   Certified copies of field notes of surveys accompanying a motion for rehearing on appeal cannot be filed as part of the record or considered.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2964, 2965; Dec. Dig. § 715.*]

Appeal from District Court, Tom Green County; J. W. Timmins, Judge.

Trespass to try title by the Kansas City, Mexico & Orient Railway Company of Texas against E. T. Jett. Judgment for plaintiff, and defendant appeals. Affirmed.

T. O. Woldert and C. E. Dubois, for appellant. Blanks, Collins & Jackson, for appellee.

KEY, C. J. This is an action of trespass to try title, and at the trial in the court below verdict and judgment went for the plaintiff, and the defendant has appealed. All the assignments of error, except one, are predicated upon the court's charge and the refusal of requested instructions. Under the other assignment appellant presents the proposition that in a boundary suit in form of trespass to try title, where the defendant, being in possession, pleads not guilty, a general verdict for the plaintiff, which does not specifically fix the boundary, and a judgment following such verdict, constitute reversible error, because such verdict and judgment do not settle the matter in controversy.

The court tried the case upon the theory that it was a boundary suit, and instructed the jury that, if they found from the evidence that lot No. 20 in block No. 78 in the Ft. Concho addition to the city of San Angelo is within the boundaries of survey No. 173, Fisher & Miller survey, to return a verdict for the plaintiff, and, if they did not find that said lot is part of survey No. 173, to return a verdict for the defendant. The jury returned a general verdict for the plaintiff, and the court rendered judgment accordingly, describing the land recovered as it is described in the plaintiff's petition, which is as follows: "Lot twenty (20) in block seventy-eight (78) of Ft. Concho addition to the said city of San Angelo, and more particularly described by metes and bounds as follows: Beginning at a stake for southwest corner of lot three (3) in block seventy-eight (78) Ft. Con-

cho addition to said city of San Angelo, for southeast corner of this tract and northeast corner of lot twenty-one (21), said beginning point being 121 feet west and 50 feet north of rock set in ground for northeast corner of Millspaugh's addition and southeast corner of said block seventy-eight (78) of said Ft. Concho addition; thence with west line of lots three (3) to nineteen (19) inclusive, of said block seventy-eight (78) Ft. Concho addition, north 413.37 feet to stake in south line of right of way of Kansas City, Mexico & Orient Railway Company of Texas; thence south 49 deg. 52 min. west with south line of same, 312.6 feet, to a stake for northwest corner of this lot, same being the northwest corner of said block seventy-eight (78); thence south with west line of said block seventy-eight (78) on east line of South Chadbourne street, 212.33 feet, to a stake, the northwest corner of lot twenty-one (21) in said block seventy-eight (78); thence east with north line of said lot twenty-one (21), 239 feet, to the place of beginning, said property above described being a portion of survey No. 173, Fisher & Miller survey, in Tom Green county, Texas."

The plaintiff put in evidence a deed, dated February 26, 1907, from the Orient Land Company, by its trustees, which conveyed the land in controversy by metes and bounds to the plaintiff; another deed dated June 17, 1905, from C. A. Broome to the trustees of the Orient Land Company, conveying the land in controversy, described by the same specific metes and bounds, and also described as out of survey No. 173. Plaintiff also introduced in evidence a deed to it from the Ft. Concho Realty Company, dated May 23, 1910, conveying the same land by the same specific metes and bounds. It was agreed that on April 18, 1905, C. A. Broome acquired the record title to survey No. 173 and the south half of the J. Ebert survey No. 680. And plaintiff also put in evidence the following agreement: "For the purpose of expediting the trial of the above styled and numbered cause, the defendant waives proof by plaintiff of the intervening muniments of title (hereby agreeing for the purpose of this trial that same constitute a regular chain of title to the land described in plaintiff's petition, but defendant does not admit that the land described in plaintiff's petition is the land of which he is in possession) between the patent to sur. No. 173, Fisher & Miller, and the following deeds to and judgment in favor of C. A. Broome, viz.: "(1) Deed dated April 18, 1905, from John H. James, independent executor of the estate of Annie James, dec'd, recorded in vol. 29, pages 253, 254, records of deeds of Tom Green county, Texas. (2) Deed dated April 19, 1904, from John H. James et al. and recorded in vol. 29, pages 404–406, records of deeds of Tom Green county, Texas. (3) Final judgment in cause No. 1,476, styled C. A. Broome v. Evelyn

James et al., recorded in minutes of district court, Tom Green county, Texas, in vol. G, page 242. By this agreement, however, defendant does not admit that blocks 50 and 68 Adams & Wickes Add. and the other property described in the deed from C. A. Broome to Ft. Concho Realty Co. dated June 24, 1905, recorded in vol. 29, page 496, records of deeds of Tom Green county, Texas, are any part of survey No. 173. And by this agreement defendant does not intend to further limit the legal effect of the pleadings in the suit."

The plaintiff also introduced in evidence a patent from the state, dated August 18, 1859, granting to Henry F. Fisher and Burchard Miller 640 acres of land, known as survey 173, and specifically described in the patent by metes and bounds. The defendant did not present any written title, but relied upon his possession, and upon his contention that lot No. 20, in block 78 of Ft. Concho addition to the city of San Angelo, was not and is not any part of the Fisher & Miller survey No. 173, and the trial court permitted him to litigate that question. In view of the agreement between the parties as set out above, we think that question was and is wholly immaterial. By the document referred to, appellant agreed that the muniments of title relied on by appellee constitute a regular chain of title to the land described in the plaintiff's petition; but he did not admit that he was in possession of that land, or that it was any part of Fisher & Miller survey No. 173. In our judgment it was wholly immaterial whether the land described in the plaintiff's petition was a part of survey 173 or of some other survey. It was much more specifically described as being lot 20 in block 78 of the Ft. Concho addition to the city of San Angelo, and then still more specifically described by particular metes and bounds, calling, among other things, for corners and lines of other lots, for a certain line of a certain railroad right of way, and for a certain line of a designated street. These descriptive calls so clearly identify the property as to render the statement that it was a part of Fisher & Miller survey No. 173 wholly immaterial.

[1] The lot referred to and specifically described in the plaintiff's petition is the land to which it was agreed that the intervening muniments of title, the production of which the defendant waived, constituted a regular chain of title. The defendant having entered into that agreement, it was immaterial whether the lot in question was on Fisher & Miller survey 173 or on some other original survey; and as that agreement, together with other documentary evidence, showed that the plaintiff had title to the land sued for, and as the defendant showed no title in himself, the court should have instructed a verdict for the plaintiff. This being the situation, it is immaterial whether the court's charge on the question of boundary was properly fram-

ed or not. And it is also immaterial whether or not refused instructions would have supplied omissions in the court's charge.

The verdict and judgment for the plaintiff was the proper result, and that judgment is affirmed.

Affirmed.

## On Motion for Rehearing.

JENKINS, J. Appellant insists that in the opinion heretofore rendered in this case we misconstrued the agreement of the parties to this suit, as set out in said opinion. If said agreement does not mean that appellee has title to the land in controversy, it is difficult to tell what it does mean; but as the trial court, having the parties to said agreement before it, tried this cause on the issue of boundary without objection from the parties to the suit, we will concede that we have been mistaken as to the meaning of said agreement and will consider the merits of the case as shown by the evidence.

One of appellant's assignments is that the judgment is a nullity, inasmuch as this was a suit to establish the south boundary line of survey No. 173, and the judgment does not establish said line. This was not a suit to establish the south boundary line of survey No. 173, but a suit to recover lot No. 20, in block 78, Ft. Concho addition to the city of San Angelo, which lot is accurately described in plaintiff's petition by objects upon the ground, the identification of which was not and could not be called in question. The judgment follows the description given in the petition, and is that the plaintiff recover of the defendant the land thus described. The executive officer of the court would have no trouble in executing a writ of possession describing the land as described in the judgment. It is true that, if plaintiff (appellee) was entitled to recover, it was because of its ownership of a portion of survey No. 173, and therefore, to make out its case, it was necessary for it to show, not necessarily where the south boundary line of said survey was actually located on the ground, but that it was far enough north to include said lot No. 20. This issue was, in effect, submitted to the jury by the learned trial court in its charge, which instructed the jury to find for plaintiff if the land described in plaintiff's petition was within the boundaries of survey No. 173, otherwise to find for the defendant. Bank v. Webb, 128 S. W. 428, 429.

[2] Appellant's remaining assignments of error relate to the refusal of the trial court to give special charges requested by him. Some of these charges were properly refused, because there was no evidence upon which they could be based; but it is a sufficient answer to all of said assignments of error to say that no other verdict could legally have been found under the evidence in this case than that which was found by the jury.

The field notes of survey No. 173 are as follows: "Beginning at a stake on the west bank of Main Concho for the lower or S. E. corner of No. 174 for the south corner of this survey (calling for two pecan bearing trees). Thence north at 850 varas crossing branch, 1,190 vrs., recrossing said branch, 1,630 vrs., recrossing again, at 2,990 vrs. a stake (calling for two mesquite bearing trees). Thence west 800 vrs. a stake (calling for two mesquite bearing trees). Thence north 370 vrs. to a rock mound made on the south bank of North Fork of Concho river for the N. W. corner of this survey, from which a pecan 8 in. dia. brs N. 51 W. 31 vrs. Thence down same with the bank of the North Concho and its meanders to its mouth. Thence up the W. bank of the Main Concho and its meanders to the beginning."

The field notes of 174 were corrected before it was patented; but neither the corrected field notes of this survey nor the field notes of subsequent surveys Nos. 680, 680½, nor 681, afford any light as to the true location of the boundary line between 173 and 174 as originally located, which is the material inquiry in this suit. The original field notes of 174 are as follows: "Beginning at the S. W. corner of sur. No. 173 (calling for two pecan bearing trees). Thence north 2,-990 vrs. to stake. Thence east 950 vrs. to stake. Thence south 4,610 vrs. to stake (calling for two pecan bearing trees). Thence down the river with its meanders to the beginning."

The following map will aid in properly understanding the matter in controversy:

No evidence was offered as to the location of the southwest corner of 174. The bearing trees called for at the southeast corner of 174 and the southwest corner of 173 cannot now be found; but there does not appear to be any controversy as to the location of said corner. Three surveyors testified on the trial of this cause as having run from said corner. The undisputed testimony is that the mesquites called for in the field notes of 173 cannot be found, and no one testified that he had ever seen either of said trees, or the stakes called for, nor was any effort made to establish either of the inner corners

of 173 or the northwest corner of 174 by reputation. The surveyors Garden and Farr testified as to finding a pecan stump on the north bank of Main Concho, which will fit the calls for the upper corner of 173, but that, if said corner be thus located, the east line of said survey run out course and distance will be 485 varas, instead of 370, as called for in the field notes.

The construction of survey 173 most favorable to appellant would be to begin at the upper corner of said survey as established by said pecan tree, and, reversing the calls, run thence south 370 varas, and thence west 800 varas for the second corner of 173 called for in the field notes, and put the excess of 115 varas in the west line of 173, thus making it 3,105 varas, instead of 2,990, as called for in its field notes.

Farr testified that to adopt the pecan bearing tree on the south bank of the North Concho river as the one called for in the field notes, and run south 370 varas, and thence west 800 varas, would place all of lot 20, block 78, in survey 173 by 32 feet. According to Garden's measurements, the north line of 173 as thus located would include said lot No. 20 by 36 feet. No testimony was given by any one to the contrary. Appellant proved by the surveyor Goodfeller that to begin at the water's edge, instead of on the bank where the call for said pecan, if it be the bearing tree called for, would place the upper corner of 173, and run thence south 370 varas and east 800 varas, would not include the land fenced by appellee, and this corresponds with Garden's and Farr's testimony, for this would be to place the south line of 173 further north 42 feet. But no reason appears why said line should be run to the water's edge. Such is not the usual manner in which surveys in this state bordering on streams are made. The call is for a stake on bank of river, and to measure back the course and distance from said pecan stump would put the corner on the second bank. There are three banks of the river at this point. The evidence shows that there is no other pecan tree anywhere in that vicinity, and no indication that any other was ever there.

Nothing appears in the evidence to indicate that the true lines of survey 173 can be more accurately retraced by beginning at the upper corner of said survey and, reversing the calls, run south 370 varas, thence east 800 varas, and thence south to the Main Concho river, rather than to begin at the corner on the Main Concho as called for in the field notes, and run thence north 2,990 varas, thence west 800 varas, and thence north to the North Concho river. To thus run survey No. 173 would include said lot No. 20 by 130 varas, or 470 feet. The testimony as to this is undisputed. It might be allowable, under the rules for determining boundary lines, to divide the excess of 115 varas from the Main Concho to the North Concho between the first and third lines of survey 173. If this excess was divided equally between said lines, survey 173 would include said lot 20 by 141.7 feet according to Farr, and by 145.7 feet according to Garden. If the excess was prorated according to the length of said lines, survey 173 would include lot 20 by 67 feet according to Farr, and by 71 feet according to Garden's measurement. So that, by any rule for the ascertainment of boundaries, the undisputed evidence shows that appellee was entitled to recover.

If survey 173½ be treated as a contemporaneous survey made by the same surveyor who made surveys 173 and 174, which fact does not appear from the record, the result would still be the same; and no other conclusion could be reached than that the land in controversy is included in survey No. 173.

For the reasons above stated, the motion for rehearing is overruled.

E. T. Jett, for the motion.

### On Second Motion for Rehearing.

KEY, C. J. Appellant, without permission from this court, has filed a second motion for rehearing. Upon proper showing, this court would grant leave to file a second motion for rehearing; but it is not proper that we be burdened with such motion, except upon good cause shown.

[3] There is no merit in said motion. It is alleged therein that we erred in not treating survey 173½ as being contemporary with surveys 173 and 174, and in support of this appellant sends with his motion certified copies of the field notes of surveys 173 and 173½. Of course, we cannot consider these copies, nor permit them to be filed as part of the record herein. As stated in the opinion herein on motion for rehearing: "If survey 173½ be treated as a contemporaneous survey, made by the same surveyor who made surveys 173 and 174, *which fact does not appear from the record*, the result would be the same."

Appellee in his second motion for a rehearing says that the upper corner of 173 on the North Concho should be located at the water's edge, because Goodfeller, in running out survey 173½, found that the courses and distances called for in that survey placed said corner 23 or 24 varas out in the river. There is not a word of such testimony in the record.

This second motion for a rehearing is not signed by any attorney, but by the appellant himself. Perhaps he did not know that the rules require that statements should be confined to matters appearing upon the record. It would be well for parties who undertake to represent themselves in this court to acquaint themselves with this rule.

The motion is dismissed.